IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:12-CT-3056-F

| | |
|---|---|
| JERRY C. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WILLIE CROSBY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

On March 12, 2012, Jerry C. Williams, an inmate in the custody of the State of North Carolina who is represented by counsel, filed this action under 42 U.S.C. § 1983 against several officers at Central Prison. Plaintiff accuses the defendants of violating his constitutional rights by employing excessive force against him on February 13, 2010. On May 25, 2012, defendants filed an answer [D.E. # 30] and a motion for judgment on the pleadings [D.E. # 31] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendants asserted that they are entitled to judgment on the pleadings because plaintiff purportedly failed to exhaust his administrative remedies before filing this action, as required by the Prison Litigation Reform Act ("PLRA"). In support of their motion, defendants relied upon numerous administrative documents, including incident reports, witness statements, and grievance records which were attached as exhibits to their answer. On June 15, 2012, plaintiff filed his response in opposition to the motion. Plaintiff argues that the motion should be denied because the exhaustion issue may not properly be resolved at the pleadings stage and because he did, in fact, comply with the exhaustion requirement. In support, plaintiff has submitted

June 27, 2012, defendants filed a reply in which they request that the court "apply Rule 12(d), Fed. R. Civ. P., and grant summary judgment dismissing Plaintiff's action." Defs.' Reply [D.E. # 35] 1. They assert that "Plaintiff already has availed himself of the opportunity to present material pertinent to a summary judgment determination on the issue of exhaustion." Id. at 2.

I.   Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows parties to move for judgment on the pleadings. The standard for resolving a Rule 12(c) motion is similar to the standard for resolving a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), with the exception that the court considers the answer as well as the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) ("However, viewing the Defendants motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal de novo and in doing so apply the standard for a Rule 12(b)(6) motion."). Thus, in a Rule 12(c) motion, the court tests the legal sufficiency of the pleadings and does not seek to resolve factual disputes between the parties. Id. at 243-44.

The parties have submitted materials beyond the pleadings in support of and in opposition to the motion for judgment on the pleadings. Rule 12(d) requires that if such materials are not "excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). See also Clatterbuck v. City of Charlottesville, _ F.3d _, 2013 WL 632950 *6 (4th Cir. Feb. 21, 2013). The Fourth Circuit has previously observed that

> the term 'reasonable opportunity' requires that all parties be given some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits

or pursue reasonable discovery. When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment.

Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (quotations and citations omitted). In this case, as discussed above, both parties have submitted materials outside in the pleadings, defendants have explicitly requested that their Rule 12(c) motion be converted to a motion for summary judgment pursuant to Rule 12(d), and approximately eight months have passed to allow the parties to conduct whatever discovery they might deem necessary to fully litigate the exhaustion issue. No additional argument or exhibits have been submitted since defendants filed their reply on June 27, 2012. Accordingly, pursuant to Rule 12(d), the court will treat the Rule 12(c) motion for judgment on the pleadings as a motion for summary judgment. See Tsai v. Maryland Aviation, 306 F.App'x 1, 4-5 (4th Cir. 2008) (unpublished decision) (citing Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 260-61 (4th Cir. 2003) (rejecting argument that district court improperly converted Rule 12(b)(6) motion to motion for summary judgment where defendant's motion expressly requested alternative relief of summary judgment and included materials beyond the pleadings and, in response, plaintiff "put additional evidence before the court of his own volition" while also declining to request additional discovery in order to contest summary judgment); see also Laughlin, 149 F.3d at 261 ("The district court, while it clearly has an obligation to notify parties regarding any court-instituted changed in the pending proceedings, does not have an obligation to notify parties of the obvious.").

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

"only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not simply rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248-49, but instead "must come forward with specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original and quotation omitted). To demonstrate that there is a genuine issue of material fact, plaintiff may not simply proffer "'the mere existence of *some* alleged factual dispute between the parties[.]'" Young v. United Parcel Service, Inc., _ F.3d _, 2013 WL 93132 *4 (4th Cir. Jan. 9, 2013) (quoting Anderson, 477 U.S. at 247)).

In determining whether a genuine issue of material fact exists for trial, a court views the facts and reasonable inferences drawn from the parties' submissions in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249-250 (citations omitted) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ."). "Conclusory or speculative allegations do not suffice" to demonstrate a genuine issue of material fact. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). Likewise, a court should not find the existence of a genuine issue of material fact based upon the uncorroborated and self-serving testimony or assertions of a party. See Harris v. Home Sales Co., 2012 WL 6217613, *8 (4th Cir.

Dec. 14, 2012) (citing Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004) (unpublished decision).

II.  Statement of Undisputed Facts

At the time of the events described in his complaint, plaintiff was incarcerated in the Mental Health Unit at Central Prison. Plaintiff suffers from mental illness, including schizophrenia. On February 13, 2010, plaintiff was involved in an altercation with prison staff after a physician ordered that he receive certain medication, by force if necessary. While in his cell, plaintiff refused to comply with an order to submit to handcuffing. Thus, a "cell extraction" team, including defendants Crosby, Evans, Galliher, Hand, and Radden, entered plaintiff's cell and forcibly subdued him while a nurse administered the medication. On February 19, 2013, plaintiff gave a witness statement in conjunction with the prison's investigation of the officers' use of force and forced medication. Plaintiff stated as follows:

> OK I got over Here MHE 308.2 11 10 They did not give me medication 2-11-10 Then 2-13-10 They Would Not Give me enny Food. Nuse game me a laxative 2-11-10 I use Toilet 2-13-10 my Toilet is Still Runing Over. So Them I told them iF They don't Cut my Water on to Fulsh my Stood I was dipping water out in Throwing it Under my Door so I did. Some one Told me to put my hands out I Said For What and Woo is you so He Said put you Hands out I said no so I Saw A Army Come and And Tryd to put my Eey out I Know Why OFFicers or useing Foce on me I have Alstalted The Segent in Receiveing and 1994 Aa C-P Id Alsaltend Nuse in 1993 at C.P I Alslated Officer Harris in 1999 I Throw Water on Segent Anndino They Beet me For that I Throw Water on C.O Boone C.P 2008. I Throw Warter on Segent Griffen 9 17 2009. I Thew Warter on Officer Townsend 8 11 2009. I Alslted A Segent Jailor in Goldsboro, NC in 2000.

Statement by Witness Jerry Williams, ex. C to Answer [D.E. # 29-3] 24-25.

The North Carolina Department of Public Safety ("DPS") has a three-step administrative remedy procedure ("ARP") which governs the adjudication of inmate grievances. See, e.g., Moore

v. Bennette, 517 F.3d 717, 721 (4th Cir.2008). The ARP first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. ARP § .0301(a).[1] If informal resolution is unsuccessful, the ARP provides that an inmate may submit a written grievance on Form DC–410 (Step 1). DPS ARP § .0310(a). The inmate is to submit this grievance form to the "Facility Head, designated screening officer, or any other staff member." ARP § .0310(a)(2). If the grievance is appropriate for resolution, the Facility Head or a designee will issue a formal response to the grievance within fifteen days, completing step one review. ARP § .0310(a)(5). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the Facility Head, who will conduct a review of the record generated at step one and consider the inmate's response to the step one resolution (Step 2). ARP § .0310(b)(1). If the inmate is not satisfied with the decision reached by the Facility Head at step two, he may appeal his grievance to the Secretary of Correction through the Inmate Grievance Examiner (Step 3). ARP § .0310(c)(1). Receipt of the grievance appeal at step three is certified by the Executive Director of the Grievance Resolution Board. Id. The decision by the inmate grievance examiner or a modification by the Secretary of Correction shall constitute the final step of the administrative remedy procedure. ARP § .0310(c)(6).

Plaintiff filed numerous grievances during his time at Central Prison. In pertinent part, on February 16, 2010, plaintiff submitted a DC-410, subsequently assigned Grievance No. 3100-10-0231, in which he describes a use-of-force against him occurring some day in February of 2010.[2]

---

[1] Defendants have provided a copy of the Department's ARP as exhibit one to their memorandum in support of their motion.

[2] Plaintiff provided both "2/11/10" and "2/16/10" at the "Date" prompt on the DC-410. It

In the space provided for his "Grievance Statement," plaintiff wrote as follows:

> I Was put in Restants And To Recorate Along Becus A White inmate Throw Piss on me and Throw AantiAdd Sick on Me Lt. Warren and Segent Pollen Saw it on Cammer and I still Got No Food For 7 days and Restants and Recorate Along. So COS Raynor Told me Come on I said Im Comeing He said Come On I said I am Comeing That Medication Prolis Some Make it Slow Ta Ack so Officer Raynor Thew me down on the steps And prses His Stick in my ne And Segent Pollen Cut my rist By taken Off Restants in putten them on Titer to cut me happen Unit One [illegible] 10

2-16-10 DC-410, ex. A to Decl. Of Jerry C. Williams, Pl.'s Resp. [D.E. # 33-1]. Pursuant to Step One of the ARP, Lt. C. Williams investigated plaintiff's grievance and advised plaintiff of his findings on March 1, 2010.

> The following occurred you was assaulted by another inmate, and was properly placed in handcuffs by Sgt. Poland, and escorted to the unit one nurse's station. You were medically screened by Nurse Giles, who noted no bodily fluids, and no apparent injuries were noted. I talked with all parties involved; they deny allegations that force was use on you, by Officer Raynor. Furthermore, you were not put on a special management meal; you were served all of your meals. Furthermore, it is the unit Standard Operation and Procedures for inmates in segregation to be placed in the recreation cells alone. Your grievance is considered resolved at this level.

Ex. D to Defs.' Answer [D.E. # 29-4]. Plaintiff appealed to Central Prison's Administrator pursuant to Step Two of the ARP. On March 19, 2010, the Administrator issued his response, again affirming the conduct of the officers described in plaintiff's grievance. Id. Plaintiff then appealed to the Secretary of the Department pursuant to Step Three. On April 6, 2010, the Inmate Grievance Resolution Board issued its Step 3 response denying the grievance. See Findings and Disposition Order, ex. B to Decl. Of Jerry C. Williams, Pl.'s Resp. [D.E. # 33-1]. In subsequent correspondence with his attorney, plaintiff asserted that Grievance No. 3100-10-0231 relates to the use-of-force

---

²(...continued)
appears plaintiff circled "2/11/10." 2-16-10 DC-410, ex. A to Decl. Of Jerry C. Williams, Pl.'s

incident carried out by the cell-extraction team on February 13, 2010.

On April 4, 2012, plaintiff filed his amended complaint [D.E. # 8]. In the amended complaint, plaintiff details his version of the events on February 13, 2010. Without alleging defendants' basis for entering his cell, plaintiff states that, after he refused an order to allow himself to be handcuffed, the "cell extraction" team entered his cell and forcibly subdued him, placed him in full body restraints and, despite his lack of resistance, began "beating him and stabbing him with sharp objects," causing numerous injuries including "a swollen and cut right eye which requires stitches" and "a broken nose and cuts on his back." Amend. Compl. [D.E. # 8] ¶¶ 7-14, 18-19. Plaintiff also alleges that he continues to suffer "chronic pain in his back and sinus problems from the assault," in addition to "severe psychological and emotional damage[.]" Id. at ¶¶ 20-21.

III. Analysis

Defendants argue that plaintiff failed to exhaust his administrative remedies prior to filing suit. The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006) (noting that exhaustion under the PLRA is mandatory). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust his administrative remedies even if the specific relief he seeks in his complaint is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Furthermore, exhaustion is

mandatory "even where the inmate claims that exhaustion would be futile." Reynolds v. Doe, 431 F. App'x 221, 222 (4th Cir. 2011) (unpublished decision) (citing Booth, 532 U.S. at 741 n.6).

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" as well as facilitates the development of "a useful administrative record" in the event of subsequent litigation. Jones, 549 U.S. at 204. In general, "[a] grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

The parties appear to dispute whether plaintiff actually filed a grievance concerning the events described in his amended complaint and whether, given his mental illness and "low level literacy," there was even a grievance process meaningfully "available" to him. The court will address the latter question first. Plaintiff asserts that "district courts have concluded that disabled or illiterate inmates have exhausted all 'available' administrative remedies when they lacked capacity to 'properly' grieve their complaints." Pl.'s Resp. [D.E. # 33] 10. Plaintiff argues that he has submitted

> evidence that he was suffering from a severe psychiatric decompensation during the period of time that he filed his grievance. In the days leading up to the February 13, 2010 incident, and the February 16, 2010 filing of the grievance, he experienced paranoid ideation and hallucinatory delusions of conversations with God and sexual threats from inmates and staff.

Id. In addition, he claims, he was often sent "to the inpatient Mental Health Unit because of acute episodes of psychosis[,]" and, the "remainder of the time, [he was] heavily medicated on strong anti-

psychotics." Id. at 10-11. Plaintiff submits that schizophrenia "is associated with cognitive symptoms that include difficulty understanding information, lack of focus, and problems with working memory. The persistence of hallucinations, delusions, and disorganized thinking may render it difficult for a schizophrenic to communicate linearly." Id. at 11. Thus, he concludes, given his "cognitive limitations, it would be inequitable to dismiss his lawsuit simply because Grievance 3100-10-0231 does not make perfect sense." Id.

Defendants argue that, whatever possible cognitive limitations may be caused by the varying degrees of schizophrenia, "[a]ll documents before the Court show that, although Plaintiff suffers from mental illness, he possesses the capacity to write intelligible grievances and has written many such grievances." Defs.' Reply [D.E. # 35] 2. Defendants assert that plaintiff's grievances, though often grammatically inept, are functional, easily understandable, and sufficient to convey the subject matter of the grievance. Thus, they contend, "Plaintiff's writings in the grievances are not the work of a person out of touch with reality." Id.

Plaintiff does not dispute that he has previously, and frequently, filed administrative grievances in which he intelligibly complained about some action or policy affecting him. Nor does he cite to any binding authority establishing the broad mental health exception to the exhaustion requirement for which he appears to be advocating in this instance. Furthermore, the district court cases he cites for the proposition that "disabled or illiterate inmates have exhausted all 'available' remedies when they lacked capacity to 'properly' grieve their complaints" are easily distinguishable. For example, in Hale v. Rao, 768 F.Supp.2d 367, 377 (N.D.N.Y. 2011), the court excused the inmate's failure to file a grievance because, in addition to the effect the inmate's "illiteracy and poor

out a grievance filled out by another inmate on [his] behalf, refused to provide him with the materials needed to file another grievance, and threatened to physically assault him if he attempted to utilize" the grievance process. In this case, while plaintiff is certainly inarticulate and cognitively limited, even he admits that he has attained at least a "low level of literacy." Pl.'s Resp. [D.E. # 33] 6. This fact, as confirmed by the numerous grievances, correspondence, and other statements composed by plaintiff which are included in the record, readily distinguishes plaintiff's case from the district court cases he cites involving wholly illiterate or otherwise disabled inmates, and it furthermore precludes the application of any broad exception to the exhaustion requirement due to plaintiff's mental illness.

Defendants have shown that a remedy process was available to plaintiff, and that he has frequently availed himself of the process in a manner which indicates that, despite his mental illness and cognitive limitations, he is aware of the grievance process, capable of expressing himself on the grievance form, and understanding of his obligations during the various steps involved. Plaintiff's assertion that the grievance process was nevertheless unavailable to him because of his mental illness, or that defendants have failed to adequately show such availability, is self-serving and conclusory. Plaintiff has failed to rebut or otherwise explain the significant evidence in the record that he capably grieved several matters during the relevant time as well as authored a detailed witness statement of the event described in his amended complaint within seven days of the event and three days after he submitted the grievance which he alternatively argues exhausted this claim. Accordingly, there is no genuine issue of material fact regarding the availability of the ARP to plaintiff.[3]

---

[3] Defendants are required to demonstrate that there is no genuine issue of material fact regarding the availability of the ARM to plaintiff. Having satisfied that burden by producing

The next point of contention between the parties is whether plaintiff indeed submitted a grievance related to the events described in the amended complaint. Defendants argue that plaintiff did not properly file a grievance concerning the February 13, 2010, use-of-force by the "cell extraction" team. They argue that, on its face, Grievance No. 3100-10-0231, which complains about "an officer's throwing [plaintiff] downstairs and a different officer's cutting Plaintiff's wrists in handcuffing him," "is entirely unrelated to allegations in the Amended Complaint, which alleges officers entered Plaintiff's cell and beat him there." Defs.' Supp. Mem. [D.E. # 32] 7. Defendants also contend that "Plaintiff could not have submitted a grievance complaining of events at issue [in the Amended Complaint] until 19 March 2010, when his 16 February 2010 grievance [No. 31-00-10-0231] completed the Step Two review." Id. Finally, defendants maintain that none of the other grievances filed by plaintiff while he could have timely filed a grievance concerning the events described in the amended complaint actually relate to those events. Id. at 7-8.

Plaintiff argues that Grievance No. 3100-10-0231 concerns the February 13, 2010, use-of-force described in his amended complaint because in it he "complains about restraints, thrown urine, deprivation of food, and an assault by officers," while the amended complaint "mentions being 'placed in full restraints,' thrown feces, being placed on a Nutra-Loaf diet, and an assault by

---

³(...continued)
significant documentary evidence of plaintiff's filing of coherent grievances related to definite events, as well as a witness statement concerning the specific events at issue in the amended complaint, it is incumbent upon plaintiff to cite to "particular parts of materials in the record" to show that the ARP still was not available to him in this instance. Fed. R. Civ. P. 56(c)(1)(A). Because plaintiff has failed to show that, notwithstanding his history of filing grievances, he was unable to exhaust his remedies in this instance due to his mental illness, he may not avert summary judgment. See, e.g., Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (recognizing that, "in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure," and

officers." Pl.'s Resp. [D.E. # 33] 6. He maintains that, "[t]hough Grievance No. 3100-10-2031 is confusing, and undeniably reflects a disorganized mind and low level of literacy, these deficiencies are attributable to Mr. Williams's mental illness. They may not be invoked to defeat his civil rights suit." Id. Plaintiff also asserts that his failure to name any of the defendants in his grievance is immaterial because the PLRA does not require that level of specificity in order to achieve exhaustion. Id. at 10. Finally, plaintiff argues that there is no requirement under the PLRA that his grievance "be artfully or professionally drafted" in order to exhaust, so long as it sufficiently conveyed to the prison notice of the subject matter of his complaint. Id. at 10-12.

Notwithstanding plaintiff's self-serving and overly-simplified assessment of their commonalities, the differences between the events described in the amended complaint and Grievance No. 3100-10-2031 are numerous and material. The amended complaint describes an altercation in which, after plaintiff threw feces at his cell door, defendants Crosby, Evans, Galliher, Hand, Radden, and Williams allegedly entered plaintiff's cell, forcibly subdued him, and then gratuitously beat and stabbed him while he lay on the ground in restraints without resisting. Amend. Compl. [D.E. # 8] ¶¶ 7-14. Grievance No. 3100-10-2031, on the other hand, describes an obviously different, and certainly less compelling, instance of alleged excessive force on an undetermined date. Indeed, the grievance more accurately appears to represent plaintiff's complaint about a number of perceived unjustified disciplinary measures, including: 1) being placed in restraints; 2) being forced to recreate alone; and 3) being deprived of food for seven days. Williams Decl. ex. A [D.E. # 33-1]. Plaintiff is clearly aggrieved by having been dealt these punishments merely because a white inmate threw "piss" and antacid on him. Id. The grievance also includes the accusation that, after being placed in restraints following the assault, "Officer Raynor," allegedly unhappy with plaintiff's

medication-induced delay in responding to his order to "come on," threw him down on some "steps" and pressed his stick against plaintiff. Id. Finally, the grievance complains that "Sgt. Pollen" then cut plaintiff's wrist by tightening his restraints. Id.

No fair, objective comparison of the two documents permits the conclusion that they describe the same events. The amended complaint alleges that the subject use-of-force stemmed from plaintiff's throwing of feces within his cell and his subsequent refusal to be handcuffed. The entire alleged episode occurs within plaintiff's cell. The grievance describes a use-of-force stemming from an assault on plaintiff by another inmate who threw "piss" and antacid at him. That use-of-force clearly occurred outside plaintiff's cell, as he claims to have been thrown onto "steps" by the impatient "Officer Raynor" as he waited for plaintiff to comply with his order to "come on." The amended complaint describes an organized and coordinated operation by the "extraction" team, which devolved into a pitiless beating of plaintiff by multiple defendants. The grievance describes one officer's alleged throwing plaintiff down and pinning him with a stick while another officer tightened his wrist restraints. None of the correctional officer actors described in the two documents overlap.[4] Finally, the injuries described in the two documents are clearly different. In the amended complaint, plaintiff alleges he suffered "a swollen and cut right eye which requires stitches" and "a broken nose and cuts on his back," while, in the grievance, plaintiff only mentions a cut to his wrist due to the tightened restraints.

---

[4] While there certainly is no requirement that a plaintiff name in his administrative grievance the specific defendants he later seeks to sue in court in order to exhaust his claims against those defendants under the PLRA, Moore, 517 F.3d at 726, the fact that plaintiff did name in his grievance the officers who allegedly employed excessive force against him, and these actors are not defendants in this action, is plainly relevant in determining whether the grievance and the amended

Notwithstanding plaintiff's subsequent correspondence with his attorney, even his own self-authored witness statement evinces his understanding that the events described in the amended complaint and Grievance No. 3100-10-2031 are distinct. Plaintiff's statement as part of the investigation of the use-of-force described in the amended complaint, which he gave three days after he submitted Grievance No. 3100-10-2031, much more closely resembles the allegations of the amended complaint. He indicates his understanding that the use-of-force event in his cell followed his own actions in throwing water from his toilet under his cell door. Statement by Witness Jerry Williams, ex. C to Answer [D.E. # 29-3]. Plaintiff further states that, after he refused to submit to handcuffing, "a Army come and And Try d to put my Eey out." Id.[5] Plaintiff's witness statement correlates with the subject matter of the amended complaint, and therefore materially conflicts with Grievance No. 3100-10-2031, because in it he consistently describes his conduct prior to the event, the location of the event, the nature of the use-of-force employed, and his resulting injuries. It is simply implausible that plaintiff, demonstrably capable of contemporaneously articulating the events depicted in the amended complaint, would have intended Grievance No. 3100-10-2031 to provide the prison with notice of his claim stemming from that event given the numerous, material differences described above.[6] Accordingly, the court finds that there is no genuine dispute that

---

[5] Plaintiff's amended complaint alleges that, "[a]fter the beating" by the cell extraction team, he "was diagnosed with a swollen and cut right eye which required stitches." Amend. Compl. ¶ 18.

[6] Moreover, it is not disconcerting that plaintiff filed a grievance based upon the events described in Grievance No. 3100-10-2031, as the record makes clear that the events described in the grievance are real and distinct, and are not simply the product of plaintiff's confused, jumbled, or "non-linear" recollection of a traumatic "cell extraction" event. In the Step One response, Lieutenant Williams stated as follows:

The following occurred you was assaulted by another inmate, and was properly

Grievance No. 3100-10-2031 is not concerned with the events described in the amended complaint and, therefore, plaintiff did not properly submit and exhaust a grievance concerning the February 13, 2010, use-of-force event in his cell.

The final issue before the court is whether it was necessary, given plaintiff's filing of a grievance which did complain about some instance of alleged excessive force, for plaintiff to file yet another grievance about the distinct alleged excessive force described in the amended complaint in order to exhaust that claim. As discussed above, the fundamental purpose of the exhaustion requirement is to ensure "that prison officials have been given an opportunity to address the claims administratively." Moore, 517 F.3d at 725. The prison officials' "opportunity" to address a particular claim, and corresponding exhaustion of the claim, is dependent upon the officials' receipt of notice that the inmate is aggrieved by a particular event, action, or policy. Sapp, 623 F.3d at 824 ("[a] grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."). "The level of detail necessary in a grievance to comply with the

---

⁶(...continued)
placed in handcuffs by Sgt. Poland, and escorted to the unit one nurse's station. You were medically screened by Nurse Giles, who noted no bodily fluids, and no apparent injuries were noted. I talked with all parties involved; they deny allegations that force was use[d] on you by Officer Raynor. Furthermore, you were not put on a special management meal; you were served all of your meals. Furthermore, it is the unit Standard Operation and Procedures for inmates in segregation to be placed in the recreation cells alone. Your grievance is considered resolved at this level.

Step One - Unit Response, ex. D to Answer [D.E. # 29-4]. Thus, the Step One response to Grievance No. 3100-10-2031 confirms many of the salient points of fact which distinguish the grievance from the amended complaint including, *inter alia*, the location of relevant events and precipitating circumstances, the officers involved, and the lack of plaintiff's "diagnosed" eye injuries resulting from the Feb. 13 "cell extraction" event. These circumstances are simply incompatible with the allegations of the amended complaint. As such, it is evident that the two matters are completely distinct and that plaintiff did not properly file and exhaust a grievance concerning the

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

North Carolina's ARM states that a "grievance is a written complaint by an inmate on the inmate's own behalf concerning an action, incident, policy, or condition within the unit or institution or within the Division of Prisons as a whole." ARM § .0301(b). Elsewhere, the ARM limits inmates to the prosecution of only one grievance during the time in which the grievance remains pending prior to the conclusion of Step Two. ARM § .0304(b). The ARM also permits a grievance to be rejected if "[t]he inmate has requested a remedy for more than one incident." ARM § .0306(b)(4). The implication of these provisions is both clear and logical–each grievance submitted pursuant to the ARM must relate to a single, discrete "action, incident, policy, or condition." Thus, it follows that, in order to be given the opportunity to adequately investigate and address an inmate's grievance contemplated by the ARM, the inmate must at least communicate to the prison the unique nature of his claim, the circumstances precipitating the events for which he is aggrieved, and the nature of any injuries he has sustained. Because the circumstances of each use-of-force or alleged deliberate indifference to a serious medical condition will generally be different, a complaint about one such instance will not suffice to exhaust a claim stemming from a separate and distinct instance, even if they are of the same general type. Likewise, a prison's determination that a particular inmate was not abused in one instance will not resolve a claim that he was abused in a separate incident. Each claim, if not causally related and if predicated upon distinct facts and characterized by distinct circumstances such as actions, actors, injuries, and locations, must be grieved separately in order to comply with the exhaustion requirement. See, e.g., Bridgeforth v. Walker, 304 F. App'x 482, 484

(10th Cir. 2010) (unpublished decision) (holding that, although state inmate's claims "raise similar issues because they both relate to prisoner abuse," he may not "bypass the administrative grievance procedure" by joining an exhausted claim with an unexhausted claim "because the administrative process is to be undertaken for each separate incident"); Herrera v. County of Santa Fe, 79 F. App'x 422, 424 (10th Cir. 2003) (unpublished decision) ("The fact that Herrera complained of abusive treatment in the past does not excuse his complete failure to take advantage of the prison's procedures for redressing any separate claims based on the November 1998 shooting. . . . [The purposes of exhaustion] would be frustrated were we to agree with Herrera that a prisoner who has previously complained of abuse somehow has a free ticket to bring similar complaints in the future based on wholly separate incidents without complying with the prison's internal grievance process."); Hooks v. Howard, 2010 WL 1235236, *10 (N.D.N.Y. March 30, 2010) (granting summary judgment and dismissing unexhausted claim about specific instance of harassment because inmate's grievance actually related to "an entirely different incident" of "alleged verbal abuse" which occurred a week prior to the incident alleged in the complaint).

The record demonstrates that the events described in the amended complaint and Grievance No. 3100-10-2031 are separate events. Plaintiff did not exhaust his administrative remedies with respect to the unique allegations set forth in the amended complaint. Nor has plaintiff pointed to any evidence in the record tending to show that the separate events are causally, or even factually, related, other than his conclusory assertion that they both involve the tossing of bodily excretions by someone, the use of restraints and excessive force on plaintiff, and some resulting–if obviously different–injury. Thus, there is no genuine issue of fact as to whether plaintiff exhausted his available administrative remedies or whether his failure to exhaust should be excused. Defendants

are entitled to summary judgment.

IV.     Conclusion

For the reasons given above, the court finds that plaintiff failed to exhaust available administrative remedies regarding the claim alleged in the amended complaint in accordance with the PLRA, 42 U.S.C. § 1997e(a). Accordingly, it is ORDERED as follows:

    a.    defendants' motion for judgment on the pleadings [D.E. # 31] is hereby converted, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, to a motion for summary judgment pursuant to Rule 56;

    b.    defendants' motion for summary judgment is GRANTED;

    c.    the amended complaint is DISMISSED; and

    d.    the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 4 day of March, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge